IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LOUIS E. RICHARD, JR.                                                              PLAINTIFF

                v.                          Civil No. 05-4071

JADE HUGHES, Jailer;
AMY KUYKENDALL, Jail
Supervisor; and SHERIFF
BUTCH MORRIS                                                               DEFENDANTS

**MEMORANDUM OPINION**

Louis E. Richard, Jr., brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. While he was incarcerated at the Howard County Detention Center, Richard contends his federal constitutional rights were violated when defendants' failed to protect him from attack by fellow inmates.

On April 14, 2006, defendants filed a motion for summary judgment (Doc. 31). On June 14, 2006, the undersigned entered an order (Doc. 34) directing the plaintiff to complete, sign and return an attached questionnaire that would serve as his response to the motion for summary judgment. On June 28, 2006, plaintiff's response to the court's questionnaire (Doc. 35) was filed. The motion is currently before the court for decision.

**I. BACKGROUND**

Richard was arrested and booked into the Howard County Detention Center (HCDC) on September 12, 2005, on a theft by receiving charge and a bond revocation. *Plaintiff's Response*

AO72A
(Rev. 8/82)

(Doc. 35)(hereinafter *Resp.*) at ¶ 1. He was incarcerated at the HCDC solely because of the pending criminal charges. *Id.* at ¶ 2.

Between 8:15 a.m. and 9:30 a.m. on September 13, 2005, Richard was involved in a physical altercation with other inmates at the HCDC. *Resp.* at ¶ 4. At 10:40 a.m. Richard asked Jailer Jade Hughes if he could be moved out of A cell. *Id.* at ¶ 5. Richard stated he had been beaten up. *Id.*

Richard was taken to Dr. H. Patel's office by Sheriff Morris and then was taken to Howard County Emergency Room for x-rays. *Resp.* at ¶ 6. Richard states he was told that he had injuries around his temple area, his upper extremities, shoulder, chest, and side. *Id.* at ¶ 9. He was prescribed Hydrocodone and Ibuprofen for pain and inflammation. *Id.* at ¶ 10.

When Richard returned to the HCDC, he told Hughes that Jerald Hendrix had accused Richard of being a police officer. *Resp.* at ¶ 7. During the argument, Richard maintained Hendrix and Maverick Cannady jumped him. *Id.* at ¶ 8.

According to an incident report prepared by Amy Kuykendall, Hendrix was also accusing Richard of stealing $30 from him on the streets. *Defendants' Exhibit* D. Kuykendall indicates she spoke with Cannady who stated Richard and Hendrix had been arguing over money. *Id.* Cannady indicated that Richard pushed Hendrix and he hit Richard in the mouth. *Id.* Cannady stated he only tried to break up the fight. *Id.* Cannady claimed Richard threatened to stab him. *Id.*

Kuykendall also indicated that Hendrix reported Richard had stolen $300 from Hendrix's house before the two of them were incarcerated. *Defendants' Exhibit* D. Hendrix maintained

AO72A
(Rev. 8/82)

they had been talking about the money and when he turned to go to the bathroom Richard hit him in the mouth. *Id.* After this, Hendrix stated they started wrestling and Richard fell and hit his head on the table. *Id.* Hendrix also reported that Richard stabbed him with a pen in the right hand. *Id.*

Richard, however, denies they were arguing over money and maintains that Hendrix never said anything about $30. *Resp.* at ¶ 7 & 12. Richard also maintains that Hendrix hit him first and he defended himself. *Id.* at ¶ 13. With respect to Cannady, Richard maintains both Hendrix and Cannady were hitting and kicking him. *Id.* at ¶ 14 & 18. Richard denies he threatened to stab Cannady or that he stabbed Hendrix with a pen. *Id.* at ¶ 15 & 20. When the altercation was over, Richard asserts Cannady was boasting that they had whipped Richard. *Id.* at ¶ 14.

Kuykendall spoke to the inmates in A cell (Gary Beasley, Freddie Cruz, James Jacoby, Kenneth Munn, John Newbold, Elbert Palmer, Jerry Pryor, Deshawn White, Orlando White, and Lonnie Coulter). *Defendants' Exhibit* D. All stated they didn't see the fight. *Id.*

Richard disagrees asserting that he has submitted statements from Joseph Pumila and Elbert Palmer, III. *Resp.* at ¶ 11. Richard has submitted the statement of Pumila as *plaintiff's exhibit* 1. In the statement, Pumila indicates that from 8:15 a.m. until 9:30 a.m. there was no jailer in the control booth. *Plaintiff's Exhibit* 1. During this time, Pumila states Richard was attacked by some inmates. *Id.* Palmer's statement was not submitted.[1]

---

[1] On October 18, 2005, Richard filed a supplement to his complaint (Doc. 5). It is a statement by the plaintiff and Elbert Palmer, III, signed the statement as a witness.

-3-

After Richard returned from Dr. Patel's office, he was moved to B cell. *Resp.* at ¶ 21. Hendrix and Cannady were kept in holding until September 14, 2005, when they were moved to G cell. *Defendants' Exhibit* D.

On September 15, 2005, Richard submitted a grievance in which he stated he had asked for a towel to wash up with and it had been two hours and the jailer had not been to Richard's cell. *Resp.* at ¶ 23. He stated this was another reason he had been jumped in that there was no one to help or stop the attack. *Id.* at ¶ 23.

In response, Kuykendall noted that Hughes was working day shift and had been in the jail area making scheduled jail checks. *Defendants' Exhibit* E. She noted that Hughes reported Richard slept all morning. *Id.*

Richard states he asked Hughes for a towel before Hughes went up front. *Resp.* at ¶ 24. Hughes responded that he would get it when he got back. *Id.* However, Richard maintains Hughes did not come back for two hours. *Id.*

In Richard's September 15th grievance, he also stated that his head and back were still hurting and that it hurt when he took a breath. *Resp.* at ¶ 25. He stated he thought something was wrong with his side and that he needed to go to the doctor. *Id.* In response, Kuykendall stated Richard had been taken to Howard Memorial Hospital for x-rays on September 13, 2005, as ordered by Dr. Patel. *Resp.* at ¶ 26.

Prior to September 13, 2005, neither Hendrix nor Cannady had threatened Richard in anyway. *Resp.* at ¶ 27 & ¶ 28. However, Richard asserts the defendants knew Hendrix and Cannady had previously attacked two other inmates. *Resp.* at ¶ 28. Richard maintains

AO72A
(Rev. 8/82)

defendants knew Hendrix and Cannady were trouble makers and defendants should have put them in holding before they attacked him. *Id.*

After the September 13, 2005, incident, Richard was not harmed again by Hendrix, Cannady, or any other inmate. *Resp.* at ¶ 29. Richard states Hendrix and Cannady were put somewhere else. *Id.* However, when they had church, Richard indicates Hendrix and Cannady jumped another inmate and then the sheriff had them moved to another jail. *Id.*

Sheriff Morris was not present when the attack occurred. *Resp.* at ¶ 30. Richard had not told Sheriff Morris prior to September 13th that he felt his safety was in danger. *Id.* The other inmates who had been jumped did not tell about the attacks until after Hendrix and Cannady were moved to another jail. *Id.*

On October 5, 2005, Richard pled guilty to the charge of forgery in the second degree and was sentenced to a term of imprisonment. *Resp.* at ¶ 3(B). He was then transferred to the Arkansas Department of Correction. *Id.* at ¶ 3(A).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth

specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  DISCUSSION

Defendants have now moved for summary judgment. They contend the facts alleged, taken in the light most favorable to the plaintiff, do not rise to the level of a constitutional violation. They point out the plaintiff was not incarcerated until September 12, 2005, and the physical altercation at issue in this case occurred the following morning. They maintain there is no evidence suggesting that they were aware Hendrix or Cannady posed any risk to Richard in particular or to inmates in general.

Due process "'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)(*quoting Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In addressing failure to

AO72A
(Rev. 8/82)

protect claims brought by pretrial detainees, the Eighth Circuit Court of Appeals has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *Perkins*, 161 F.3d at 1129- 1130.  *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

> In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:
>
> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595.  *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail, Richard must show:  (1) that his incarceration with Hendrix and Cannady posed a substantial risk of serious harm, and (2) each of the defendants knew of and

-7-

disregarded an excessive risk to Richard's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

To establish the second component, Richard must show that each defendant acted, or failed to act, with deliberate indifference to Richard's safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Further, the United States Court of Appeals for the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat." *Id.* at 1130. Further, the district court found that "the defendants periodic cell checks yielded no information that would have put them on such notice." *Id.* The Eighth Circuit Court of Appeals found no clear error. *Id.* It noted that "[a]lthough the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, or had reason to know, that Wilson was a violent sexual aggressor, either on this or a previous occasion." *Id.*

In this case, we believe defendants are entitled to summary judgment. Prior to the attack on Richard, neither Hendrix nor Cannady had threatened Richard in anyway. *Resp.* at ¶ 27 &

-8-

AO72A
(Rev. 8/82)

¶ 28. While Richard makes the conclusory statement that Hendrix and Cannady had jumped two other inmates and were trouble makers, *resp.* at ¶ 28, there is nothing to suggest defendants were aware of this alleged prior attack before this incident with Richard. Moreover, according to Richard, at least some of the inmates who allegedly had problems with Hendrix and Cannady did not come forward until after Hendrix and Cannady were moved to another facility. *Resp.* at ¶ 30. This move came at some unspecified date after the attack on Richard. *Id.*

Richard's claim is premised largely on his contention that Hughes was not in the control booth or in cell A for a two hour period. *See e.g., Resp.* at ¶ 31. Richard maintains that had Hughes been in the cell or the control booth, the altercation would not have happened or at the very least it could have been stopped before Richard got injured. *Resp.* at ¶ 31.

In short, Richard contends Hughes was derelict in his duties by not making his rounds in the jail and/or manning the control booth. He also suggests the facility was understaffed and that Kuykendall and Sheriff Morris did not properly supervise the staff to insure rounds were being done and the control booth staffed. *See e.g., Resp.* at ¶ 32.

This is simply insufficient to establish that genuine issues of material fact exist as to whether Richard was incarcerated under conditions posing a substantial risk of serious harm and as to whether defendants recklessly disregarded the risk. Nothing before the court, other than Richard's conclusory statement, suggests Hendrix or Cannady had a previous history of violent attacks on inmates or that there was any reason to suspect an attack was going to occur. We cannot say there is a genuine issue of material fact as to whether defendants acted, or failed to act, with deliberate indifference to the safety of Richard. *Crow*, 403 F.3d at 600 (Allegation that

AO72A
(Rev. 8/82)

the facility was overcrowded, poorly supervised and understaffed at most show that the "officials may have acted unreasonably in failing to take particular measures to improve the conditions at the facility, but does not rise to the level of deliberate indifference. Even if they were unreasonable, and might have done various things to prevent the blow Crow endured, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim.").

## IV. CONCLUSION

For the reasons stated, the court finds that the defendants' motion for summary judgment should be granted. A separate order in accordance with this opinion will be entered.

DATED this 15th day of August 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)